IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARCOS MARTINEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 1:15cv97-WKW |
| ) | (WO) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is petitioner Marcos Martinez's ("Martinez") motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. Doc. Nos. 1 and 2.[1] After considering the parties' submissions, the record, and the applicable law, the court finds that Martinez's § 2255 motion should be denied without an evidentiary hearing. Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

## I. INTRODUCTION

On September 30, 2013, Martinez pled guilty under a plea agreement to conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). After a sentencing hearing on February 5, 2014, the district court sentenced Martinez to 181 months in prison, comprising consecutive terms of 121 months on the conspiracy count and 60 months on the firearm count. No direct appeal followed.

---

[1] Unless otherwise indicated, references to document numbers ("Doc. No.") are to those assigned by the clerk of court in this civil action. All page references are to those assigned by CM/ECF.

On February 4, 2015, Martinez, through counsel, filed this § 2255 motion raising the following claims:

1. His counsel before and during the guilty plea proceedings, Gregory McKeithen, was not a member in good standing with the federal bar in his home district, the Northern District of Georgia, and thus should not have been admitted to represent Martinez *pro hac vice* in the Middle District of Alabama.

2. McKeithen rendered ineffective assistance of counsel by failing to investigate the case properly or consult with Martinez and discuss discovery materials prior to his guilty plea.

3. McKeithen was ineffective for failing to advise him of the ramifications of his guilty plea to the § 924(c) count, and as a result his plea was not knowing and voluntary.

4. McKeithen was ineffective for failing to investigate whether Martinez's prior counsel in a state court case had a conflict of interest in representing his codefendant in his federal case.

5. He is actually innocent of the § 924(c) count to which he pled guilty.

Doc. No. 1 at 2–3; Doc. No. 2 at 6–22.

## II.  DISCUSSION

**A.  General Standard of Review**

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if

condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

**B.   Trial Counsel's *Pro Hac Vice* Admission in Middle District of Alabama**

Martinez contends that his counsel before and during the guilty plea proceedings, Gregory McKeithen, was not a member in good standing with the federal bar in his home district and thus should not have been admitted to represent Martinez *pro hac vice* in the Middle District of Alabama. *See* Doc. No. 1 at 2; Doc. No. 2 at 6–10.

On June 25, 2013, McKeithen requested *pro hac vice* admission to appear in the Middle District of Alabama to represent Martinez, who had retained McKeithen to represent him on the criminal charges in this court. *See* 1:13cr82-WKW, Doc. No. 40. Attached to McKeithen's request for *pro hac vice* admission, as required by this court's local rules, was a certificate of good standing from McKeithen's home district, the federal district court for the Northern District of Georgia. *See* M.D.Ala.LR 81.1(b)(3). This court granted McKeithen's request for *pro hac vice* admission on July 10, 2013. *See* 1:13cr82-WKW, Doc. No. 61.

Approximately two months before he was retained by Martinez, McKeithen, who had practiced as a Judge Advocate General ("JAG") attorney with the Navy, was suspended from practicing as a Navy JAG attorney by a military administrative board, based on a finding of fraternization between an officer and an enlisted member. *See* Doc. No. 13 at 1–2. According to Martinez, McKeithen was obligated to report this military suspension to the Northern District of Georgia, and, had he done so, the Northern District of Georgia would have refused to issue the certificate of good standing he attached to his request for *pro hac vice* admission in this court. Doc. No. 2 at 8–10. Martinez also suggests that McKeithen was obligated under this court's local rules to report his military suspension when requesting *pro hac vice* admission. *Id*. at 10.

3

The government argues that Martinez's claim regarding McKeithen's *pro hac vice* admission to represent him on the criminal charges in this court is barred from review by the waiver provision in Martinez' plea agreement. Doc. No. 17 at 5.

The written plea agreement contained a waiver provision with the following pertinent language:

DEFENDANT'S WAIVER OF APPEAL AND COLLATERAL ATTACK

Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, Defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence. Defendant further expressly waives the right to appeal the conviction and sentence on any other ground and waives the right to attack the conviction and sentence in any post-conviction proceeding, including a Title 28, United States Code, Section 2255 proceeding. This waiver does not include the right to appeal and collaterally attack the sentence on the grounds of ineffective assistance of counsel or prosecutorial misconduct.

Doc. No. 13-4 at 6–7. Under this provision, Martinez waived his rights to appeal or collaterally attack his conviction and sentence, except on grounds of ineffective assistance of counsel or prosecutorial misconduct. Martinez neither alleges nor demonstrates how McKeithen's military suspension or the purported deficiencies in his *pro hac vice* request submitted to this court rendered him ineffective or affected the defense of his case. Consequently, Martinez's instant claim does not fall under the rubric of "ineffective assistance of counsel" and is not exempt from coverage by a valid waiver of his appeal and collateral-attack rights.

An appeal waiver or collateral-attack waiver is valid if a defendant enters it knowingly and voluntarily. *See Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005); *United States v. Bushert,* 997 F.2d 1343, 1350–55 (11th Cir. 1993). In this circuit, such waivers have been enforced consistently according to their terms. *See United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006) (collecting cases). To enforce such a waiver, the government must demonstrate either

4

that (1) the court specifically questioned the defendant about the waiver during the change of plea colloquy, or (2) the record shows that the defendant otherwise understood the full significance of the waiver. *Bushert,* 997 F.2d at 1351.

Nothing in the record indicates that the waiver in Martinez's case was anything but knowing and voluntary. The terms of the waiver provision were stated in open court at the change of plea hearing, and Martinez represented to the court he understood those terms. Doc. No. 17-6 at 13–14. Further, the written plea agreement contained Martinez's signature under language acknowledging that he had read and understood the plea agreement and that the matters and facts in the written agreement accurately reflected all representations made to him and all the terms reached. Doc. No. 17-4 at 12. Martinez does not claim he did not understand the consequences of the waiver. Under these circumstances, the court finds that Martinez understood the full significance of the waiver provision in his plea agreement and that his assent to the waiver was knowing and voluntary. Consequently, the court agrees with the government that Martinez's claim regarding McKeithen's *pro hac vice* admission to represent him in this court is barred from review by the waiver provision in his plea agreement.

The court further agrees with the government's contention that, even if this claim is not barred by the waiver provision, Martinez does not demonstrate McKeithen was improperly admitted to represent him *pro hac vice* in this court. As the government observes, Martinez's suggestion that McKeithen did not qualify for *pro hac vice* admission is based on several unsupported factual assumptions:

> Martinez's argument begins with the conclusory assertion that Mr. McKeithen was "not a member of the Bar in good standing during his representation of Martinez." To get to his desired conclusion, Martinez must make a number of factual leaps, most notably that Mr. McKeithen had an affirmative obligation to report a military suspension to his home district, the Northern District of Georgia, and that had Mr. McKeithen done so the Northern District of Georgia would have refused to issue

5

>the certificate of good standing required for *pro hac vice* admission to the Middle District of Alabama.

Doc. No. 17 at 6–7.

In an affidavit addressing Martinez's claim, McKeithen acknowledges that in April 2013 a military administrative board suspended him from practicing as a Navy JAG attorney, based on a finding of fraternization, but states that because the matters addressed by the board "were administrative in nature, were of a unique military issue only, and did not involve the actual practice of law," he concluded he was under no duty to report the suspension to the federal bar in his home district of the Northern District of Georgia or to any other licensing authority. Doc. No. 13 at 2–3. The only rule Martinez cites to challenge McKeithen's interpretation of his disclosure obligations is this court's Local Rule 81.1(1), which requires attorneys to notify the clerk of the court if they are "suspended, disbarred, or subjected to any form of public discipline by any other Court." *See* M.D.Ala.LR 81.1(1). However, the plain language of this rule supports McKeithen's interpretation of his disclosure obligations, because McKeithen was not suspended "by any other Court," but by a military administrative board. Nor does Martinez point to any local rule of the federal district court for the Northern District of Georgia placing an affirmative obligation upon him to report his military administrative suspension to that court.

Thus, Martinez's argument that McKeithen should not have been admitted to represent him *pro hac vice* in this court is based on supposition upon supposition. Martinez supposes, without establishing, that McKeithen was obligated to report his military administrative suspension both to the federal district court for the Northern District of Georgia and to this court. He further supposes that, had McKeithen done so, the Northern District of Georgia would have refused to issue a certificate of good standing and this court would not have granted his request for *pro hac vice* admission. While in hindsight (as the government acknowledges), it may have been wiser for

6

McKeithen to make some sort of disclosure in an abundance of caution, Martinez fails to demonstrate that McKeithen was improperly admitted to represent him *pro hac vice* in this court or that he did not qualify for *pro hac vice* admission. Consequently, he is entitled to no relief based on this claim even when the claim is considered on the merits.

**C. Claims of Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1.   *Failure to Investigate Case, Consult with Defendant, or Discuss Discovery*

Martinez claims McKeithen rendered ineffective assistance of counsel by failing to investigate his case properly or consult with him prior to his guilty plea. Doc. No. 1 at 2; Doc. No. 2 at 12–13. According to Martinez, McKeithen never discussed discovery materials with him and did not visit him in jail before he pled guilty. *Id.; see also* Doc. No. 12 at 3–4.

In an affidavit addressing this allegation, McKeithen states:

> All legal options were discussed and reviewed with Movant. All of the discovery materials were discussed and reviewed with the Movant prior to any resolution of his case. Moreover, in an abundance of caution, and in the exercise of due diligence, Counsel utilized a bilingual investigator to assist with the review of the entire discovery with Movant. The investigator, Javier Garcia, met with Movant on numerous occasions.

Doc. No. 13 at 3.

McKeithen's averments are in stark contrast with Martinez's assertions in his § 2255 motion. However, at his plea colloquy, Martinez stated that he had sufficient time to discuss his case and the charges against him with counsel, did not dispute the facts against him, and stated that he was satisfied with McKeithen's representation. Doc. No. 17-6 at 5–6. Such statements constitute a formidable barrier in this collateral proceeding. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Moreover, Martinez fails to explain how McKeithen's investigation was inadequate and further fails to identify how he was prejudiced by the allegedly inadequate investigation or by McKeithen's alleged failure to discuss discovery materials with him. Martinez has neither alleged nor offered any forecast of evidence showing he would have chosen to go to trial or successfully

8

contested the charges against him had he reviewed discovery to his satisfaction. Vague and conclusory allegations of this kind cannot support a finding that counsel rendered ineffective assistance. *See, e.g., United States v. Goss*, 646 F.Supp.2d 137, 143–44 (D.D.C. 2009) (defendant's "vague allegation" of ineffective assistance of counsel did not provide information from which the court could find either deficiency or prejudice).

Even if McKeithen conducted only a limited investigation of Martinez's case or failed to discuss the entire government's discovery materials with him, Martinez demonstrates no resulting prejudice. By the time Martinez retained McKeithen, the government had amassed overwhelming evidence against Martinez, and Martinez had cooperated with law enforcement. As the government notes in addressing this claim (*see* Doc. No. 17 at 10–12), the DEA had been listening to Martinez's phone calls through a court-ordered wiretap for months before his arrest. *See* Doc. No. 17-15 (PSI) at 5, &5. Intercepted phone calls and other investigative techniques had established that Martinez was the leader of a methamphetamine trafficking ring operating in South Alabama and the Florida panhandle. *Id*. When DEA agents executed a search warrant at Martinez's residence in February 2013, the agents found Martinez in the master bedroom trying to stuff approximately $9,000 in cash into an air duct. *Id*. at 8, &17. Also seized from the bedroom were a loaded handgun, a 12-gauge shotgun with a box of ammunition nearby, and various items of paraphernalia associated with the drug trade. *Id.; id.* at 9, &19. After DEA agents read Martinez his *Miranda* rights, he immediately agreed to cooperate with law enforcement and took agents to a pump house on the property where he had stashed 176.2 grams of 96.4% pure methamphetamine. *Id*. at 8, &18. Martinez also admitted to receiving and selling most of a pound of methamphetamine earlier that day. *Id*. at 8, &17. One week later, Martinez agreed to an interview with law enforcement, during which he admitted to distributing hundreds of ounces of methamphetamine.

9

*See* Doc. No. 17-17.  All these events occurred before Martinez retained the services of McKeithen. Under the circumstances, Martinez fails to demonstrate that he could have been prejudiced by an inadequate investigation of his case by McKeithen or by McKeithen's failure to discuss the entire government's discovery materials with him; that is, he fails to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Martinez is entitled to no relief based on this claim.

### 2. *Failure to Explain Ramifications of Guilty Plea to § 924(c) Count*

Martinez contends that McKeithen was ineffective for failing to advise him of the ramifications of his guilty plea to the § 924(c) count, and as a result his guilty plea was not knowing and voluntary.  Doc. No. 1 at 2–3; Doc. No. 2 at 13–18.  Martinez maintains that he told McKeithen he was not guilty of the firearm offense, but McKeithen convinced him to plead guilty to that count anyway.  Doc. No. 2 at 13; Doc. No. 12 at 3.

The *Strickland* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  A petitioner alleging ineffective assistance in this context must establish that counsel's performance was deficient (i.e., professionally unreasonable) and that counsel's deficient performance "affected the outcome of the plea process."  *Hill*, 474 U.S. at 59.  To establish prejudice, then, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded [not] guilty and would ... have insisted on going to trial."  *Id*.  A mere allegation by a defendant that he would have insisted on going to trial but for counsel's errors is insufficient to establish prejudice; rather, the court will look to the factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial.  *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001); *United States v. Arvantis,* 902 F.2d 489, 494 (7th Cir. 1990*); see also Holmes v. United*

*States*, 876 F.2d 1545 (11th Cir. 1989) (*Hill* does not require a hearing merely because a defendant asserts a claim of ineffectiveness of counsel when the record affirmatively contradicts the allegations).

At the change of plea hearing, Martinez stated he understood that, to prove him guilty of the § 924(c) count, the government must show he committed a drug trafficking crime and that he knowingly and purposefully possessed a firearm in furtherance of the drug trafficking crime. Doc. 17-6 at 17–18. He then specifically admitted his guilt to the § 924(c) count. *Id*. at 21. The written plea agreement, under the heading "Statutory Maximum Penalties for Charged Offenses," indicated Martinez would face a sentence of not less than five years and not more than life, consecutive to any other sentence, if convicted on the § 924(c) count. Doc. No. 17-4 at 3. Martinez signed this agreement, attesting that he had read it and understood its terms. *Id*. at 12. At the change of plea hearing, the court advised Martinez that "any punishment you get as to count number 19 [the § 924(c) count] must be consecutive to whatever punishment you receive for count one [the conspiracy count]. In other words, you must finish serving whatever sentence you receive for count one before you would then begin to serve whatever sentence you receive as to count 19." Doc. No. 17-6 at 20–21. Martinez told the court he understood this. *Id.* at 21.

Thus, in open court and under oath, Martinez acknowledged he was guilty of the § 924(c) count and affirmed he understood the sentencing consequences for that offense. "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Martinez fails to overcome that presumption

here. He does not show that his guilty plea was unknowing and involuntary or coerced by McKeithen. This claim entitles Martinez to no relief.

Even if Martinez could establish that McKeithen performed deficiently here, he has not proved he was prejudiced by McKeithen's performance, because he has not made an adequate showing that he would have pled not guilty and insisted on going to trial but for McKeithen's alleged errors. *Hill*, 474 U.S. at 59–60. At the time of Martinez's guilty plea, there was abundant evidence of his guilt on the § 924(c) count. Had Martinez gone to trial, he likely would have been convicted on this count. Martinez "has not proffered even a hint of any defense, much less a suggestion that he could have succeeded had he gone to trial." *United States v. Farley*, 72 F.3d 158, 165 (D.C. Cir. 1995). Moreover—and quite significantly—the record reflects that the government was not willing to entertain a guilty plea that allowed for dismissal of the § 924(c) count. *See* Doc. No. 17-18 at 2; Doc. No. 13 at 4. If Martinez was unwilling to plead to § 924(c) count, he would have to proceed to trial on that count and the conspiracy count—and on fifteen other counts dismissed as part of his plea agreement (five counts of methamphetamine distribution and ten counts of unlawful use of distribution facility). There was compelling evidence of Martinez's guilt on all these counts. Without a guilty plea and plea agreement, Martinez also would not have benefited from acceptance-of-responsibility adjustments that resulted in a three-level reduction in his offense level, or from the five-level downward departure that the government moved for, and the district court granted, based on his substantial assistance. *See* Doc. No. 17-13 at 10–15; Doc. No. 17-4 at 4–5.

Martinez has not demonstrated that in light of the strength of the government's case and the sentence he faced, he would not have entered a guilty plea to the § 924(c) count and would instead have proceeded to trial but for McKeithen's alleged deficiencies. *See United States v.*

*Dyess*, 730 F.3d 354, 362–63 (4th Cir. 2013) (§ 2255 movant alleging he received ineffective assistance of counsel in deciding whether to plead guilty could not establish prejudice where "the Government had overwhelming evidence of [the movant's] guilt—his arrest and prosecution were the result of a long investigation complete with wiretaps, drug buys, and co-conspirator testimony"). Because Martinez fails to establish prejudice resulting from McKeithen's performance, he is not entitled to relief on this claim. *See United States v. Hunt*, 560 Fed. App'x 2, 3 (D.C. Cir. 2014) ("[T]he overwhelming evidence against Hunt, together with the somewhat favorable terms of the plea deal, suggest that, even if Hunt's counsel performed deficiently, there is no 'reasonable probability' that but for counsels' errors the outcome of the proceeding would have been different.").

### 3. *Failure To Investigate Prior Counsel's Potential Conflict Of Interest*

Martinez contends McKeithen was ineffective for failing to investigate whether attorney David Harrison, Martinez's prior counsel in a state court case, had a conflict of interest in representing Martinez's son, a codefendant in his federal case. Doc. No. 1 at 2; Doc. No. 2 at 18–20.

Addressing Martinez's claim, McKeithen states:

> [P]rior to Counsel representing Movant, Movant had retained counsel, David Harrison. Movant, through Mr. Harrison, had previously commenced a cooperation agreement with the government and had communications with the government. Movant, agreed to continue said cooperation and expressly confirmed that it was his intent to continue to cooperate with the government. Movant informed counsel that on a previous occasion he was represented by Mr. Harrison. Movant stated that the previous matter with Mr. Harrison was not directly related or connected to the present case. I understood that the potential for a conflict of interest was more of an issue with Movant as he was concerned that his son, Sanuel Martinez, would be called by the government as a witness to testify against him. After speaking with Mr. Borden he informed me that he was not calling Sanuel Martinez as a witness to testify against Movant. I relayed this information to Movant and that appeared to resolve any potential conflict of interest. After further discussing the

13

potential conflict of interest with Movant, he did not object to Mr. Harrison representing his son, Sanuel Martinez.

Doc. No. 13 at 5–6.

Because the government informed McKeithen it did not intend to call Martinez's son as a witness against him, McKeithen came to the reasoned conclusion that no disabling conflict existed in Harrison's representation of Martinez's son. *See Ferrell v. Hall*, 640 F.3d 1199, 1242–43 (11th Cir. 2011). Moreover, Martinez fails to show he was prejudiced in any way as a result of Harrison's representation of his son in his federal case. Failing to demonstrate deficient performance by McKeithen or resulting prejudice, Martinez is entitled to no relief based on this claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687–89.

**D. Innocence as to § 924(c) Count**

Martinez claims he is actually innocent of the § 924(c) count to which he pled guilty. Doc. No. 1 at 3; Doc. No. 2 at 13–17 and 20–22.

Prisoners asserting actual innocence must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006).

As the Supreme Court observed in *Schlup*:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324.

By pleading guilty, Martinez acknowledged he possessed a firearm in furtherance of a drug trafficking crime in violation of § 924(c). *See* Doc. No. 17-4 at 5–6; Doc. 17-6 at 21. Martinez points to no new reliable evidence, as required by *Schlup*, to support his claim he is actually innocent of the § 924(c) offense. Instead, he merely disavows his guilty plea and attempts to reargue the sufficiency of the evidence. *See* Doc. No. 2 at 13–17 and 20.

Martinez seems to argue that under *Bailey v. United States*, 516 U.S. 137 (1995), his conduct did not establish criminal liability under 18 U.S.C. § 924(c), particularly because he did not use, carry, or actively employ a firearm during the alleged drug trafficking crime. *See* Doc. No. 2 at 13–17. In *Bailey*, the Supreme Court held that a conviction under the "use or carry" prong of § 18 U.S.C. 924(c) requires the government to demonstrate "active employment" of the firearm, not its mere possession, during and in relation to the drug trafficking crime. 516 U.S. at 143–44. However, the pre-1998 version of § 924(c) made it an offense only to use or carry a firearm during and in relation to the drug trafficking crime. The *Bailey* decision's narrow interpretation of "use" under § 924(c) prompted Congress to amend the statute in 1998 to add language directed to possessing a firearm "in furtherance of" the predicate crime. *See United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002). After the 1998 revision of the statute, there are two ways to violate § 924(c): the statute makes it an offense to either (1) use or carry a firearm during and in relation to a crime of violence or drug trafficking crime or (2) possess a firearm in furtherance of such crime. *See Timmons*, 283 F.3d at 1250–53; *United States v. Daniel,* 173 Fed. App'x 766, 770 (11th Cir. 2006). Martinez was charged with, and pled guilty to, violating the "possession in furtherance of" prong of § 924(c). *Bailey* is inapposite to his claim.

To establish that a firearm was possessed "in furtherance" of a drug trafficking crime, the government must show "'some nexus between the firearm and the drug selling operation.'"

15

*Timmons*, 283 F.3d at 1253 (quoting *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001)). "The nexus between the gun and the drug operation can be established by '... accessibility of the firearm,... proximity to the drugs or drug profits, and the time and circumstances under which the gun is found.'" *Id.* (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414–15 (5th Cir. 2000)).

The facts underlying Martinez's guilty plea showed he was arrested while secreting thousands of dollars in drug proceeds in an air duct in his bedroom. Doc. No. 17-15 at 8, &17. Within his reach in the bedroom were a loaded handgun (on the bed) and a shotgun (inside a closet), along with small quantities of methamphetamine packaged for sale. *Id*; *id*. at 9, &19; Doc. No. 17-16 at 7. Digital scales and plastic baggies and other paraphernalia connected to the drug trade were also recovered from the residence. Doc. No. 17-15 at 9, &19. Martinez admitted to distributing methamphetamine out of his residence on the day he was arrested. *Id.* at 8, &17.

Here, the proximity of the loaded handgun to the drugs Martinez was trafficking established a nexus sufficient to prove a violation of § 924(c). Martinez's bare assertion of his actual innocence entitles him to no relief.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Martinez be DENIED and this case DISMISSED with prejudice.

It is further ORDERED that the parties shall file any objections to this Recommendation or before **May 5, 2017**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) will bar

a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this 18th day of April, 2017.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE